JULY 1827.

Grice
v.
Jones.

---

## FARIS and POWELL v. KING.

1. Defendant offers to prove usury by his own oath. Plaintiff on oath denies part of the facts stated by defendant. Such statements of defendant going to prove usury, as are not directly denied, are though admissible evidence.

2 A note made for purpose of raising money for maker, and sold at a discount beyond the legal interest, is usurious, and the buyer, though ignorant of the original taint, cannot recover on it.

DEBT in the Circuit Court of Shelby county, Edmund King against James W. Faris and Edward Powell, on their bill single, for $500, dated 22nd April, 1824, payable to Isaac Johnson, 1st January, 1825, and by him assigned to the plaintiff.

The defendants plead several pleas, all in effect, averring, that the note was given in consideration of $400, lent by King to Faris, and in violation of the statute to regulate the rate of interest. Issues being taken on the pleas, the defendant, Faris, on the trial, offered to prove by his own evidence, that he applied to King to lend him $400, and offered to pay $500 at the time of payment mentioned in the note. Plaintiff replied that he could have the money, but that he must go and get a note drawn, for it would not do for him (plaintiff) to know much about it. Faris had a note drawn for $500, payable in currency, on the 1st of January, 1825, and sent it to King by Johnson, (the endorser of the note now sued on,) to get the money, who returned it, saying that King would not accept a note for currency. but required one for dollars. This note was then destroyed, and the note now

sued on drawn and signed, Faris then called on the plaintiff, and they went together to the house of Johnson to procure his endorsement. Faris gave the note to Johnson, who endorsed and delivered it to the plaintiff, and then said to Faris, "you are. to get the money, come and see if you like it." He approached and received the $400 from the plaintiff, and then said to him, that he wanted the $400 for a special use, and needed $5 more, which he wished to get from plaintiff on account of work that he was doing for him. Plaintiff refused to let him have the $5; that he, Faris, had requested Powell and Johnson to befriend him, Faris, in getting the money, as above stated.

The defendants further offered to prove by the defendant Powell, that he signed the two notes above mentioned, at request of Faris, and as his security, to raise the $400 for him; and that Powell received no consideration.

These statements being reduced to writing, and offered as evidence for the defendants, pursuant to the 4th and 5th section of the statute of 1819, to regulate the rate of interest, *a* the plaintiff made affidavit to a statement to the following effect: that Faris might have been in need of $400, but he denies that he ever applied to him for the loan of that sum; that he never told him that he could have the money on getting a note made, or used any such expression as that it would not do for him to know much about it, or had any conversation like it; that Faris come to him and inquired what he would give for $500 on Powell? He answered $400. Faris did not say that he would get Powell or any person to make the note, or to whom it was payable, but it was plaintiff's impression that it was payable to Faris. He had spoken of building a house for Powell. Plaintiff had paid him more than $500 in advance, on a contract for building; that plaintiffs knows nothing of the understanding between Faris, Powell and Johnson, or either of them; has no knowledge or recollection of the note payable in currency, but if such had been offered, he would have refused it, and thinks that if such had been offered, and he had sent Johnson to get a new one, he should have recollected it. Faris proposed to him to go to Johnson, saying that he wanted money, and also, to ascertain if he could get a horse of Johnson. Plaintiff answered that having business in that direction, he had no objection to going by

a Laws Ala. 445.

Johnson's. On the way plaintiff asked Faris if he had Powell's note; he replied "that is none of your business." A short time after their arrival at Johnson's, Johnson took plaintiff aside, shewed him the note on which this suit is brought, and asked what he would give for it; plaintiff replied $400; the bargain was struck; the money paid to Johnson, and the note endorsed and delivered by him. Plaintiff never saw the note in possession of Faris; did not go to Johnson's to procure his endorsement; had no agency in the business farther than is above stated; and when he received the note, did not know that the negotiation was for the benefit of Faris, though he was present and received the money.

The Circuit Court being of opinion that the plaintiff, as required by the statute, had sufficiently denied the truth of what the defendants had offered to swear to, rejected the evidence which they so offered to give. To which the defendants excepted, &c.

Verdict and judgement against the defendants for the debt $50, damages, and the costs. The plaintiff released $110 of the judgement. The judgement was rendered at April term, and between the 16th and 23d April, 1826.

Faris and Powell here assigned the matter of the bill of exceptions as error.

Kelly and Hutchinson, for plaintiffs.

Mardis and Barton, for defendants in error.

JUDGE SAFFOLD delivered the opinion of the majority of the Court.

The question presented by the bill of exceptions is, does the affidavit of the plaintiff in the action amount to a denial of what the defendants offered to swear against him?

By the fifth section of the act of 1819, "to regulate the rate of interest," [a] it is enacted "that in all cases whatso- *a Laws Ala. 445* ever, when any suit or action shall be brought in any court of record in this State, touching or concerning any usurious bond," &c. the borrower or party to such usurious bond, &c. shall be a good and sufficient witness to give evidence of such offence: provided, that if any person against whom such evidence is offered to be given, will deny on oath, to be administered in open Court, the truth of what such witness offers to swear against him,

33

then such evidence shall not be admitted. By the fourth section of the same act, the obligor or obligors shall be deemed competent witnesses to prove the usurious consideration.

The plaintiff's affidavit in this case, does not deny the conversation with Faris as to his advancing $500 on Powell's note for $400; that Faris carried the note when they went together to Johnson's, and delivered it to Johnson, who then endorsed and delivered it to the plaintiff; that Johnson said to Faris, " as you are to receive the money, come and see if you like it;" that Johnson, immediately after receiving the money, paid it over to Faris. Nor does the plaintiff deny that the sole object of the negotiation, between the obligors and endorser, was to obtain the $400 by the bond for $500. There appears to have been no liability imposed or intended by the bond until it passed into King's hands.

Giving the most charitable construction to his affidavit, all that can be made of it, is that he was ignorant of the particular scheme adopted by the obligors and endorser. His statements, which contradict the statements made by the defendants, merely tend to shew that he had no knowledge of, or direct participation in, the creation of the bond for an usurious purpose.

The testimony of the borrower, like other testimony, may consist of statements of several distinct facts. It would seem absurd, to say that the defendant must be admitted as a witness, unless every fact stated by him is denied on oath by the plaintiff; nor does it seem more reasonable that the whole evidence which the defendant offers to give, shall be rejected, because the plaintiff has denied one or more of the facts of which it consists, while other material facts, perhaps sufficient to sustain the defence, remain undenied. We are bound to give to the statute such construction as will suppress the mischief, and advance the remedy contemplated by the Legislature. Throughout the statute it appears to have been the object of the Legislature to provide means by which all usurious dealings, however artfully disguised or secretly arranged, may be detected and exposed to the animadversion of the law. The statute declares that all contracts, for a higher rate of interest than that established by law, shall be utterly void; imposes a penalty for taking more, to be recovered by action of debt; requires that the grand

juries shall be charged to present, and that the solicitor shall prosecute every person who may violate the statute; and by the fourth and fifth sections, and under the proviso or restriction already mentioned, makes the obligor, borrower, or party to the usurious contract, a competent witness to prove the usury. The terms of the fifth section have a general application to all litigation in relation to usury, wherein the borrower or party would, without the aid of the statute, be incompetent by reason of his interest. A construction admitting him as competent, only where he was free from interest and uncontradicted by the other party, would make this part of the statute operate to narrow instead of enlarging the means for detecting usury. On the other hand, to admit the defendant, without any qualification, to give evidence of usury, would hold out a dangerous temptation to perjury. The statute makes him a competent witness as to this matter, although interested, provided the person against whom he offers to give such evidence, will not on oath deny the truth of what the defendant offers to swear. The Court can indulge no speculations as to the credibility of the parties, nor say that, if the plaintiff denies and thereby excludes a part of the evidence which the defendant offers to give, the remainder, though undenied, is unworthy of credit. So much as remains undenied, if material, must, we think, be admitted for the consideration of the jury.

In this case, were the facts to which the defendants offered to swear, and which the plaintiff did not on oath deny, material in sustaining their plea?

If a note or bond be given on usurious consideration, it is void. It remains void in the hands of any one to whom it may come. If given on a legal consideration, and free from usury in its origin, no subsequent illegal contract in which it may be transferred, can impair the holder's right of action against the original debtor; but the endorsee of a note purchased at a discount greater than the legal rate, can recover from his endorser only the sum which he paid for it. A note drawn for the purpose of being discounted at an usurious rate of interest, and endorsed for the accommodation of the maker, is void in its original formation. [a] The latter case does not, in any material feature, differ from the one under consideration; admitting that the plaintiff was ignorant that the bond did not pass from the obligors to the endorser

[a] 5 John. 44.
n. tvs. Smith
Id. 355.

Faris and Powell
v.
King.

in the ordinary course of business. If there be any difference, if no consideration passed between the original parties and the bond was made in order to obtain the money from the plaintiff at an usurious rate, this would appear to be the stronger case of the two. In that case the notes were drawn for the purpose of enabling the payee to raise the money for himself. In this the defendants offered to prove that the bond was made solely for the purpose of enabling one of the obligors to raise the money at an usurious rate of interest. In both the cases cited, the principle is recognized, that a note made for the accommodation of the maker or payee, for the purpose of raising money at an *usurious rate* of interest, and sold by such person at a discount greater than the lawful rate of interest, is void in its original formation, and it is immaterial whether the assignee know of the circumstances or not. Many other authorities were referred to in the argument, some sustaining, and none directly impugning this doctrine.

It is the opinion of the majority of the Court, that the judgement must be reversed and the cause be remanded.

The CHIEF JUSTICE and JUDGE WHITE concurred.

## By JUDGE CRENSHAW.

THE statute which has been referred to, authorizes a party coming within its provisions, to give evidence on his own behalf. That a party in interest shall be a witness for himself, is in derogation of rules of evidence, which have been sanctioned by the wisdom and experience of ages. Such an innovation may open a wide field to frauds and perjuries. To such a statute therefore, I feel bound to give not a liberal, but a strict construction, and to allow it no greater latitude than the Legislature obviously intended. To extend its operation by a liberal construction, must obviously lay a snare for the consciences of the parties, both plaintiffs and defendants.

The expression in the statute, that the party "from whom such higher rate of interest is, or shall be taken, shall be a good and sufficient witness to give evidence of such offence," I think clearly means, that he shall be competent only when the higher rate of interest has been actually received by the lender, and not where it has only been contracted for; and even if the terms be of doubt-

ful import, the statute should not be liberally expounded, in order to permit a party to testify on his own behalf. Here the defendants did not offer to prove that the usurious interest had been taken from or paid by them ; and for this reason, I think that their testimony was properly rejected.

But let us suppose that the statute made the defendants competent to testify on their own behalf, not only as to usurious interest taken, but as to such interest merely contracted for; it will be recollected that the statute authorizes the defendants to testify only to such facts as. constitute usury. In this case, the plaintiff on oath, virtually denied all such facts.

Powell offered to swear that he was security to the note. Faris offered to swear that he applied to the plaintiff for the loan of $400, and that the plaintiff told him that he must get a note made for $500, and that the note in question was accordingly made by Faris and Powell, and endorsed to the plaintiff by Johnson, and $400 paid by plaintiff for it. These facts if true, would constitute usury. But all of them I think were denied by the plaintiff's affidavit, in which he says that Faris applied to him to know what he would give for a note of $500 on Powell; that he replied $400. I deem it unnecessary to notice the other matters which the defendants offered to prove by their own oaths, and which the plaintiff denied.

But it is said, if the note was made for the purpose of raising money at a discount greater than the legal rate of interest, although King was ignorant of this, the note was usurious in its origin ; because Powell became security, and Johnson endorsed without consideration, and merely for the accommodation of Faris. If this doctrine be correct, every note made for the purpose of obtaining money from a Bank, and there discounted at a legal or illegal rate of interest, is usurious in its inception, and therefore void. The mere act of making a note in order to raise money, and getting one friend to sign as security, and another to endorse, has no savour of usury; and selling it afterwards at a discount, to one who had no knowledge of these circumstances, cannot convert into usury, that which was before innocent. I cannot but consider every argument which has been used on this head, in support of the judgement of the majority of the Court,

JULY 1827.

Faris and Powell
v.
King.

as sophistical, and that the authorities have been misapplied. To me the case appears to be a very plain one. The defendants offered to swear that the note is usurious. The plaintiff on oath denied this. Then, according to the statue, the testimony which the defendants offered to give on their own behalf. should not have been admitted. In my opinion the judgement should be affirmed.

JUDGE GAYLE not sitting

Judgement reversed and cause remanded.